UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                                                          Criminal Case no. 5:10-CR-417
                                                                            (GTS)
AVERY LUNDQUIST,

                Defendant.
_____

APPEARANCES:                                                          OF COUNSEL:

HON. RICHARD S. HARTUNIAN                             GEOFFREY J.L. BROWN, ESQ.
United States Attorney for the N.D.N.Y.                   TAMARA THOMSON, ESQ.
  Counsel for the Government                               Assistant United States Attorneys
100 South Clinton Street
Syracuse, NY 13261-7198

HON. LISA A. PEEBLES                                           MELISSA A. TUOHEY, ESQ.
Federal Public Defender for the N.D.N.Y.                 Assistant Federal Public Defender
  Counsel for Defendant
4 Clinton Exchange, 3d Floor
Syracuse, NY 13260

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in the above-captioned criminal prosecution for receipt and possession of child pornography, is the Government's request for an Order directing Defendant to pay restitution to his crime's "victim" in the amount of $3,000, pursuant to 18 U.S.C. § 2259. For the reasons set forth below, the Court grants the Government's request and directs Defendant to pay restitution to his victim in the amount of $3,000.00.

I.      **RELEVANT BACKGROUND**

    A.      **The Government's Sentencing Memorandum**

Generally, in its sentencing memorandum, the Government requests that Defendant's victim, "Amy," be awarded restitution in the amount of $3,000 for three reasons. (Dkt. No. 58.) First, argues the Government, the record evidence establishes that an image file from the Amy series was found on Defendant's computer. (*Id*.)

Second, argues the Government, the record evidence establishes that Amy is aware that persons who download, possess, receive, and/or distribute her image are frequently identified, and every such person presents an additional harm to her. (*Id*.)

Third, argues the Government, while Amy has requested a restitution award of $27,500 ($25,000 for Defendant's share of her relative losses, and $2,500 for her attorney's fees), an application of the factors outlined by the Supreme Court in *Paroline v. United States*, 134 S. Ct. 1710 (2014), suggests that the most reasonable, nontrivial award is $3,000, because (a) the Government does not have complete statistics on the number of past offenders caught and convicted for crimes contributing to the victim's general losses, (b) the Government does not have complete statistics on the number of future offenders caught and convicted for crimes contributing to the victim's general losses, (c) the Government does not have any reliable estimate of the broader number offenders who will never be caught, (d) there is no evidence that Defendant distributed the images of Amy, (e) there is no evidence that Defendant was involved in the production of the images of Amy, (f) Defendant possessed only one image of Amy, and (g) $3,000 is roughly the mean of the substantial number of restitution awards granted to Amy before the Supreme Court issued its decision in *Paroline*. (*Id*.)

### B. Defendant's Sentencing Memorandum

Generally, in his sentencing memorandum, Defendant asserts three arguments. (Dkt. No. 57.) First, argues Defendant, the Court should decline to order any restitution in this case, because Amy is not a victim of Defendant's offense in that no proof has been offered that he *knowingly* possessed the image of her found on his computer: while Defendant pleaded guilty to knowingly receiving and knowingly possessing images of child pornography, he was not charged with, and he did not plead guilty to, knowingly receiving or knowingly possessing the particular image at the center of the current restitution request. (*Id.*)

Second, argues Defendant, even if Amy is deemed a victim of Defendant's offense, the Court should hold a hearing to (a) establish whether any information in Amy's original restitution request has changed, (b) evaluate Amy's claim of lost wages and benefits amounting to $2,855,173, and (c) disaggregate the losses caused by Amy's uncle and determine the amount of total losses attributable solely to the group of traffickers. (*Id.*)

Third, argues Defendant, even if Amy is found to be a victim of Defendant's offense, the Court should order no more than the lowest non-trivial amount in restitution, which is between $50 (given that Chief Justice Roberts has found that the projected total number of persons who have viewed Amy's images is at least 71,000 individuals) and $500 (given that this is the highest award she has received and not appealed from). (*Id.*)[1]

---

[1] The Court notes that Defendant waived personal appearance at his re-sentencing. (Dkt. No. 46.)

## II.     GOVERNING LEGAL STANDARD

"Enacted as a component of the Violence Against Women Act of 1994, [18 U.S.C.] § 2259 requires district courts to award restitution for certain federal criminal offenses, including [the receipt of] child-pornography . . . ." *Paroline v. United States*, 134 S. Ct. 1710, 1716 (2014). As the Supreme Court has explained in *Paroline*,

> Section 2259 states a broad restitutionary purpose: It requires district courts to order defendants 'to pay the victim . . . the full amount of the victim's losses as determined by the court,' § 2259(b)(1), and expressly states that '[t]he issuance of a restitution order under this section is mandatory,' § 2259(b)(4)(A).

*Paroline*, 134 S. Ct. at 1718-19. Section 2259(b)(3) defines the phrase "the full amount of the victim's losses" as including "any costs incurred by the victim" for the following:

> (A) medical services relating to physical, psychiatric, or psychological care;
> (B) physical and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;
> (E) attorneys' fees, as well as other costs incurred; and
> (F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3).

The Supreme Court held in *Paroline* that Section 2259(b)(3)(F)'s "proximate-cause requirement applies to all the losses described in § 2259." *Paroline*, 134 S.Ct. at 1722. As a result, "[r]estitution is . . . proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." *Id*. However,

> where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional

>causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

*Id*. at 1727.

It falls on the district court to determine the "proper amount of restitution." *Id*. In general, "[i]t is well recognized that district courts by necessity 'exercise . . . discretion in fashioning a restitution order,'" and in that determination "a court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." *Id*. at 1727-28 (quoting 18 U.S.C. § 3664[a]). Because of the unique nature of restitution in child pornography cases, the Supreme Court also set out "a variety of factors district courts might consider in determining a proper amount of restitution." *Id*. at 1728. "[A]s a starting point, [district courts may] determine the amount of the victim's losses caused by the continuing traffic in the victim's images . . . , then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses." *Id*. As the Supreme Court has explained,

>These [factors] could include [1] the number of past criminal defendants found to have contributed to the victim's general losses; [2] reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; [3] any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); [4] whether the defendant reproduced or distributed images of the victim; [5] whether the defendant had any connection to the initial production of the images; [6] how many images of the victim the defendant possessed; and [7] other facts relevant to the defendant's relative causal role.

*Id*. "These factors . . . should . . . serve as rough guideposts for determining an amount [of restitution] that fits the offense." *Id*.

This last point of law requires some elaboration. The Court's determination of the appropriate restitution award must not be arbitrary. *See id.* at 1729 ("Restitution orders should represent 'an application of law,' not 'a decisionmaker's caprice, . . . and the approach articulated above involves discretion and estimation."); *Kennedy*, 643 F.3d at 1261 ("[A] restitutionary award under § 2259 will be improper if the district court must engage in arbitrary calculations to determine the amount of [a] victim's losses."). However, "it is neither necessary nor appropriate to prescribe a precise algorithm for determining the proper amount [of restitution]"; and the list of factors that a district court "might" or "could" consider in awarding restitution "need not be converted into a rigid formula" (especially if doing so "would result in [a] trivial restitution order[ ]"). *Paroline,* 134 S. Ct. at 1727-28. In short, the Court's consideration of each factor (and thus the government's consideration of evidence regarding each factor)[2] is not required in all cases. *Id.*; *accord, United States v. Watkins*, 13-CR-0268, 2014 WL 3966381, at *7 (E.D. Cal. Aug. 13, 2014) ("Consideration of future offenders is not required, however.").

Finally, in calculating the final dollar figure owed in restitution, mathematical precision is not required. *See, e.g., Paroline,* 134 S. Ct. at 1728 ("[Determining the proper amount of restitution] cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment."); *United States v. Monzel*, 641 F.3d 528, 540 (D.C. Cir. 2011) (recognizing that "mathematical precision" is not required in determining the dollar amount of a victim's

---

[2] Of course, the government bears the burden of proving the amount of a victim's losses by a preponderance of the evidence. *See Paroline*, 134 S.Ct. at 1729 ("[T]he government . . . bears the burden of proving the amount of the victim's losses[.]"); *United States v. Kennedy*, 643 F.3d 1251, 1263 (9th Cir. 2011) ("[T]he government must prove by a preponderance of the evidence that [the defendant's] offenses proximately caused the losses incurred by [the victims]."); *accord*, *United States v. Aumais*, 656 F.3d 147, 152 (2d Cir. 2011).

losses attributable to the defendant); *cf. United States v. Doe*, 488 F.3d 1154, 1159-60 (9th Cir. 2007) ("[W]e and the other circuits addressing restitution orders under Section 2259 have not imposed a requirement of causation approaching mathematical precision.").

### III.   ANALYSIS

#### A.   Receipt or Possession of the Victim's Images

The first step in deciding whether to award restitution under *Paroline* is to determine whether Defendant received or possessed the victims' images. *Paroline*, 134 S. Ct. at 1727; *accord*, *United States v. Miner*, 14-CR-0033, 2014 WL 4816230, at *6 (N.D.N.Y. Sept. 25, 2014) (D'Agostino, J.); *United States v. Hernandez*, 11-CR-0026, 2014 WL 2987665, at *5 (E.D. Cal. July 1, 2014).

Instead of disputing that he received or possessed Amy's image, Defendant disputes that he *knew* he had done so. *See, supra,* Part I.B. of this Decision and Order. After carefully considering the matter, the Court rejects this argument for two reasons.

First, while it is true the Indictment did not specifically mention the particular image of Amy, it mentioned no particular images at all: rather, it charged Defendant with knowingly receiving, and knowingly possessing, "image files" of child pornography. (Dkt. No. 8.) Moreover, while it may be true that the Government did not specifically identify Amy's image at Defendant's plea hearing on December 22, 2010, the Government did not specifically identify many of the 243 images of child pornography found on Defendant's computers. (Dkt. No. 21, at 5.) Nor did the Government need to do so, in giving its statement of the factual basis for the plea. Based on the Indictment, plea and evidence discovered from investigators, the Court finds that Defendant knowingly received or possessed Amy's image.

Second, a similar argument (i.e., that a victim has to prove that the defendant actually *viewed* the images depicting the victim) has been rejected by several other district courts after *Paroline*. *See, e.g., United States v. Reynolds*, 12-CR-20842, 2014 WL 4187936, at *5 (E.D.Mich. Aug. 22, 2014) (rejecting argument that "a victim has to prove that the defendant actually viewed the images depicting the victim"); *Hernandez*, 2014 WL 2987665, at *5 ("Defendant has not shown that opening and/or viewing an image is a required element of knowing receipt."). As noted by the district court in *Reynolds*,

> [T]he Court need not look further than the opening line of the Paroline opinion to reject this argument:
>
> This case presents the question of how to determine the amount of restitution a possessor of child pornography must pay to the victim whose childhood abuse appears in the pornographic materials possessed.

*Reynolds*, 2014 WL 4187936, *5 (quoting *Paroline*, 134 S.Ct. at 1710).

### B.    Victim's Outstanding Losses Caused by the Continuing Traffic in Her Images

The second step in deciding whether restitution should be awarded under *Paroline* is to determine whether the victim seeking restitution has outstanding losses caused by the continuing traffic in her images. *Paroline*, 134 S. Ct. at 1727; *accord*, *Miner*, 2014 WL 4816230, at *7; *Hernandez*, 2014 WL 2987665, at *6.

Instead of disputing that Amy has suffered losses as a proximate result of the ongoing traffic in her images, Defendant argues that the Court should hold a hearing to determine the amount of those losses. *See, supra,* Part I.B. of this Decision and Order. After carefully considering the matter, the Court rejects this argument.

As the Second Circuit has explained,

> Pursuant to 18 U.S.C. § 3664(d)(5), so long as the victim's losses are ascertainable at least ten days before sentencing, and the documents supporting the victim's losses are provided to the defendant within this time-frame, the district court may decide restitution at the sentencing hearing without holding a separate evidentiary hearing.

*United States v. Hagerman*, 506 F. App'x 14, 19-21 (2d Cir. Dec. 20, 2012), *aff'g in pertinent part*, *United States v. Hagerman*, 10-CV-0462, 2011 WL 6096505, at *3-5 (N.D.N.Y. Nov 30, 2011) (Suddaby, J.).

With regard to Defendant's argument that a hearing is necessary to establish whether any information in Amy's original restitution request has changed, that argument is based on Defendant's failure (as of August 13, 2014) to obtain a copy of an "Update on Psychological Consultation by Joyanna Silberg, Ph.D., dated October 23, 2012." (Dkt. No. 57, at 7; *see also* Dkt. No. 54.) However, the day after the argument was made, that document was filed under seal. (Dkt. No. 59, Attach. 1, at 24-28.)

With regard to Defendant's argument that a hearing is necessary to evaluate Amy's claim of lost wages and benefits amounting to $2,855,173, that argument is based on Amy's purported failure to provide any evidence to "support her claim that the actions of the group of traffickers in her images will cause her to be unable to work for the rest of her life." (Dkt. No. 57, at 7.) For the sake of brevity, the Court will not linger on the fact that it ruled on this issue nearly three years ago. *United States v. Lundquist*, 847 F. Supp.2d 364, 376-77 (N.D.N.Y. 2011) (Suddaby, J.), *rev'd in part on other grounds*, 731 F.3d 124 (2d Cir. 2013). In any event, the Court does not interpret Amy's claim as being that she will be *completely* unable to work for the rest of her life. Moreover, the day after Defendant's argument was made, evidence regarding Amy's net lost wages and benefits was filed. (*See, e.g.,* Dkt. No. 59, Attach. 1, at 38-40, 48, 53-60

[attaching pages 1, 2, 3 and 11, and Tables 3 through 6, of Summary of Losses Report by Dr. Stan V. Smith, referencing Interview with Dr. Joyanna Silberg on September 13, 2008, and calculating lost wages and benefits].)

With regard to Defendant's argument that a hearing is necessary to disaggregate the losses caused by Amy's uncle and determine the amount of total losses attributable solely to the group of traffickers, this argument is based on the assumption that *Paroline* requires such disaggregation. In support of its position that *Paroline* does require such disaggregation, Defendant cites page 1722 of Paroline. (Dkt. No. 57, at 7.) However, the Court has difficulty finding anything on that page that actually requires such disaggregation. *Paroline*, 134 S. Ct. at 1722. The Court notes that the District of Oregon has reached a similar conclusion.[3]

However, the Court is not confident that the Second Circuit will agree, given its (albeit pre-*Paroline*) analysis in *United States v. Lundquist*, 731 F.3d 124, 140-41 (2d Cir. 2013) ("Lundquist cannot be ordered to make restitution for harm that Amy's uncle's conduct proximately caused. . . . Accordingly, the district court abused its discretion by including all of Amy's losses in calculating Lundquist's share. On remand, the district court shall apportion some of Amy's total losses to her uncle before determining the loss caused by Amy's knowledge that individuals had downloaded images of the abuse she suffered."). As a result, out of an

---

[3] *See United States v. Galan*, 11-CR-60148, 2014 WL 3474901, at *3-4 (D. Or. July 11, 2014) ("[T]o seek restitution, the government need not engage in the virtually impossible and fruitless task of determining what percentage of a victim's 'harm' was caused by the perpetrator of the initial abuse and what 'harm' was caused by those who possessed and distributed the victim's images. . . . [N]otwithstanding the dictum providing rhetorical support for defendant's position, I find that *Paroline* all but rejected the underlying premise of defendant's argument. . . . [U]ntil the Ninth Circuit or the Supreme Court mandates the 'disaggregation' of harm and/or losses caused by the underlying sexual abuse of child pornography victims, I will not require the government to do so when seeking restitution under § 2259.").

abundance of caution, the Court will assume that such disaggregation is necessary.

In any event, the Court finds that, under the circumstances, a hearing is not necessary to determine the amount of total losses attributable solely to the group of traffickers. This is because the Court finds that, based on a careful consideration of Amy's Victim Impact Statement and psychological reports (and the "re-traumatization" she has experienced due to others' viewing of images of her original abuse),[4] the losses attributable solely to the group of traffickers to amount to half of Amy's total losses. More specifically, the Court finds that, it appears as likely that others' viewing of images of her original abuse is the cause of her losses as it is that her original abuse is the cause of those losses.

As for the total amount of Amy's losses (starting at the time of Defendant's offense in February and March of 2010), the Court calculates that total amount as being $3,373,162.50. More specifically, that amount is comprised of future counseling expenses in the amount of $493,542.50 (equaling the total amount of $512,681.00 in Table 7 of Dr. Stan V. Smith's Report minus the 2009 expenses of $9,581 and half of the 2010 expenses of $19,115) plus net lost wages and benefits in the amount of $2,879,620.00 (equaling 2011-2056 wages of $3,204,353 in Table 3 minus 2011-2056 offset wages of $324,733 in Table 6).[5]

Taking half of those total losses, the Court finds that the group of traffickers caused losses to Amy in the amount of $1,686,581.25.

---

[4]     *Lundquist*, 731 F.3d at 126-27, 138.

[5]     While the Government also requests restitution for attorney's fees in the amount of $3,500.00, and other costs in the amount of $17,063.00, the Court is unable to find, in the materials submitted, those losses substantiated by a preponderance of the evidence. *See Miner*, 2014 WL 4816230, at *8 (reaching an analogous conclusion for similar reasons).

### C.     Proper Amount of Restitution

Having found that Defendant received and possessed images of the victim, and that the victim has outstanding losses as a proximate result of Defendant's conduct, the third and final step is for the Court to order restitution in an amount that comports with Defendant's relative role in the casual process that underlies the victim's general losses. *Paroline*, 134 S. Ct. at 1727; *accord*, *Miner*, 2014 WL 4816230, at *9; *Hernandez*, 2014 WL 2987665, at *7.

As explained above in Part II of this Decision and Order, the factors to be considered in setting an award of restitution "could include" the following: (1) "the number of past criminal defendants found to have contributed to the victim's general losses"; (2) "reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses"; (3) "any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted)"; (4) "whether the defendant reproduced or distributed images of the victim"; (5) "whether the defendant had any connection to the initial production of the images"; (6) "how many images of the victim the defendant possessed"; and (7) "other facts relevant to the defendant's relative causal role."  As also explained above in Part II of this Decision and Order, these factors are "rough guideposts"; and, in calculating the dollar figure owed in restitution, mathematical precision is not required.

### 1. The Number of Past Criminal Defendants Found to Have Contributed to the Victim's General Losses

Before the Supreme Court issued its decision in *Paroline*, calculating a restitution award based on this factor was repeatedly endorsed by the Second Circuit. *See, e.g., Lundquist*, 731 F.3d at 138 (endorsing district court's apportionment based upon division of the total number of persons convicted of possessing these images); *United States v. Hagerman*, 506 F. App'x 14, 19 (2d Cir. 2012) (endorsing district court's apportionment based upon division of total losses by the number of "defendants successfully prosecuted for unlawful possession of child pornography featuring [the victim]"). This method was also endorsed by the Sixth Circuit in *United States v. Gamble*, 709 F.3d 541, 554 (6th Cir. 2013) ("In a situation such as Vicky's, in which approximately three hundred defendants have been convicted, . . . , the number of convicted possessors is a reasonable divisor.").

Since the issuance of *Paroline*, several district courts have applied this method. *See, e.g.*, *Watkins*, 2014 WL 3966381, at *7 ("[T]he undersigned recommends dividing Vicky's total losses . . . by . . . the number of restitutions orders that have issued directing payment of restitution to Vicky as of the restitution hearing in this case."); *Galan*, 2014 WL 3474901, at *7 (employing calculation in which "the 'pool' of losses incurred by [the victim] after the date of the instant offense is divided by the number of standing restitution orders"); *Hernandez*, 2014 WL 2987665, at *8 (employing approach in which "the court divide[s] [the victim's] proven general losses by the number of defendants convicted of possessing, receiving, or distributing her images").

For these reasons, the Court will do so here. Despite the Government's argument that it does not have "complete" statistics on the number of past offenders caught and convicted for

crimes contributing to the victim's general losses, both parties adduced evidence that, as of February 25, 2014, 190 individuals have been convicted of receiving, possessing and/or distributing pornographic images of Amy. (Dkt. No. 57, Attach. 1; Dkt. No. 59, Attach. 2.) While this number conceivably may have increased between February 25, 2014, and August 13, 2014 (the date of the Government's sentencing memorandum), the Court has no evidence of that fact, having found no such cases reported on Westlaw or Lexis, and having found no evidence of such cases in Defendant's papers.

As a result, the Court finds that 190 is a reasonably reliable number. Dividing Amy's total losses of $1,686,581.25 by 190, the Court reaches an initial conclusion that Defendant caused $8,876.74 of Amy's losses.

### 2. Reasonable Predictions of the Number of Future Offenders Likely to Be Caught and Convicted for Crimes Contributing to the Victim's General Losses

There is no evidence before the Court to support a reasonable prediction of the number of future offenders likely to be caught and convicted for crimes contributing toe Amy's general losses. (Dkt. No. 58, at 9.) District courts following *Paroline* have declined to consider this factor in such a circumstance. *See, e.g., Watkins*, 2014 WL 3966381, at *7 (declining to consider *Paroline*'s second suggested factor because "[t]here is no evidence before the court to support a reasonable prediction of the number of future offenders."); *United States v. Reynolds*, 12-CR-20843, 2014 WL 4187936, at *6 (E.D. Mich. Aug. 22, 2014) ("The Government has not provided evidence regarding [this] factor[] . . . . [The factor] therefore do[es] not impact the restitution awards in this case.").

Granted, at least one district court has assumed that the number of people caught,

convicted, and ordered to contribute to the payment of a particular victim's damages "could double," and used that assumed number to apportion the victim's total losses. *See United States v. Crisostomi*, 12-CR-0166, 2014 WL 3510215, at *3 (D.R.I. July 16, 2014). However, the Court finds that such a speculative assumption–which is wholly devoid of any explanation of why the number was not as likely to increase half fold as it is likely to increase one fold–results in an *unreasonable* prediction (as well as an arguably trivial restitution amount, which is impermissible). *See Watkins*, 2014 WL 3966381, at *7 ("The defense asks the court to double the prior restitution order figure as an estimate of those collectively responsible for the victim's losses . . . , but doing so would be impermissibly arbitrary. . . . Moreover, doubling the known universe of offenders would result in a restitution amount that nears triviality, especially in light of the victim's injuries. Trivial restitution amounts are also impermissible.").

As a result, the Court finds that this factor does not change the Court's initial conclusion that Defendant caused $8,876.74 of Amy's losses.

### 3. Any Available and Reasonably Reliable Estimate of the Broader Number of Offenders Involved (Most of Whom Will, of Course, Never Be Caught or Convicted)

There is no evidence before the Court to support a reasonably reliable estimate of the broader number of offenders involved. (Dkt. No. 58, at 9.) Again, district courts following *Paroline* have declined to consider this factor in such a circumstance. *See, e.g., Reynolds*, 2014 WL 4187936, at *6 ("The Government has not provided evidence regarding [this] factor[] . . . . [The factor] therefore do[es] not impact the restitution awards in this case.").

Defendant argues that, in his dissent in *Paroline*, Chief Justice Roberts found that "the projected total number of persons who have viewed Amy's images is at least 71,000

individuals." (Dkt. No. 57, at 9.) However, Chief Justice Roberts rendered no such finding. Rather, in his dissent, he merely referenced a *legal brief* by Respondent that "estimat[ed]" that Paroline's "market share" of Amy's harm was 1/71,000 or $47. *Paroline*, 134 S. Ct. at 1734. Having neither the legal brief nor supporting evidence (if any such evidence exists) before it, the Court is unable to conclude that this estimate is "reasonably reliable," as those words are used by the majority in *Paroline*.

As a result, the Court finds that this factor does not change the Court's initial conclusion that Defendant caused $8,876.74 of Amy's losses.

### 4. Whether the Defendant Reproduced or Distributed Images of the Victim

There is no evidence before the Court that Defendant reproduced or distributed images of the victim. District courts following *Paroline* have declined to increase the restitution award based on this factor in such a circumstance. *See, e.g., Reynolds*, 2014 WL 4187936, at *6 ("[T]he Government's brief also acknowledges that 'there is no specific evidence that Defendant distributed Cindy and Vicky's images.' . . . Accordingly, this Court will not increase the restitution awards based on this factor.").

As a result, the Court finds that this factor does not increase the Court's initial conclusion that Defendant caused $8,876.74 of Amy's losses.

### 5. Whether the Defendant Had Any Connection to the Initial Production of the Images

There is no evidence before the Court that Defendant had any connection to the initial production of the images. District courts following *Paroline* have declined to increase the restitution award based on this factor in such a circumstance. *See, e.g., Reynolds*, 2014 WL

16

4187936, at *6 ("[I]t is undisputed that there is no evidence to indicate that Reynolds had any connection to the initial production of the images of either Cindy or Vicky. Accordingly, this Court will not increase the restitution awards based on this factor.").

As a result, the Court finds that this factor does not increase the Court's initial conclusion that Defendant caused $8,876.74 of Amy's losses.

### 6. How Many Images of the Victim the Defendant Possessed

Based on the evidence before the Court, Defendant possessed only one pornographic image of Amy. While this number is certainly one too many, it appears to be lower than average in such cases, which (in the undersigned's experience) often involve a handful of pornographic images of a particular victim.

This experience appears consistent with that of judges in reported federal cases across the country. While there are certainly outlying cases,[6] the bulk of the cases appear to involve a handful of images of a particular victim. *See, e.g., Paroline*, 134 S. Ct. at 1723 (noting that Paroline possessed two images from the "Misty Series"); *In re Unknown*, 701 F.3d 749, 752 (5th Cir. 2012) (noting that "[a]t least two [of the] images were of Amy"), *vacated in part on other grounds*, *Paroline v. United States*, 134 S. Ct. 1710 (2014); *Galan*, 2014 WL 3474901, at *3 ("Of those images, ten were from the 'Cindy' series of child pornography and four were from the '8 Kids' series and specifically included images of John Doe IV."); *United States v. Covert*, 09-

---

[6] *See, e.g., Reynolds*, 2014 WL 4187936, at *7 ("The Government's Brief states that Reynolds possessed sixteen (16) images of Cindy and nineteen (19) images of Vicky. Reynolds has not disputed those numbers. The Court concludes it is appropriate to increase the restitution awards based on this factor."); *United States v. Rowe*, 09-CR-0080, 2010 WL 3522257, at *1 (W.D.N.C. Sept. 7, 2010) ("Relevant to the issue of restitution, among the 243 images and 9 videos found in the Defendant's possession were images from what has come to be known as the 'Vicky' series.").

CR-0332, 2011 WL 134060, at *1 (W.D. Pa. Jan. 14, 2011) ("With regard to the instant restitution issue, two of the images are from the 'Misty' Series of images wherein the victim has been identified as 'Amy.'"); *United States v. Woods*, 09-CR-1012, 689 F. Supp.2d 1102, 1104 (N.D. Iowa March 3, 2010) ("The child pornography found on Defendant's computer included six video images and three still images from the 'Vicky Series.'").

As a result, the Court finds that, based on this factor, it is appropriate to decrease by half the restitution award of $8,876.74, thus reducing it to $4,438.37. The Court finds that any further decrease based on this factor would trivialize the restitution award in this case, which is not permitted. *See, supra,* Part II of this Decision and Order.

### 7. Other Facts Relevant to the Defendant's Relative Causal Role

Among the other facts that courts sometimes consider in such circumstances is the mean or the median of the awards that the victim has received in her other restitution cases, after the highest and lowest awards are discarded. *See, e.g., Miner*, 2014 WL 4816230, at *11-12; *United States v. Kearney*, 672 F.3d 81, 100 (1st Cir. 2012).

The Court is somewhat cautious of this method, because the method could conceivably rely on awards that themselves were determined *arbitrarily*, which is not permitted. *See, supra,* Part II of this Decision and Order. Indeed, at least one district court has rejected a comparison to prior restitution awards on the ground that they were decided before *Paroline*, and the district court lacked information concerning the methodology used in calculating those awards. *Hernandez*, 2014 WL 2987665, at *8.

Having said that, the Court notes that the Government itself has relied on the approximate mean of the prior awards granted to Amy, in finding that an award of $3,000.00

would be reasonable in this case. (Dkt. No. 58, at 10 & n.8.) As a result, under the particular circumstances of this case, the Court finds that it is appropriate to reduce its tentative award of $4,438.37 to a final award of $3,000.00.

**ACCORDINGLY**, it is

**ORDERED** that Defendant shall pay restitution to Amy in the amount of THREE THOUSAND DOLLARS ($3,000.00); and it is further

**ORDERED** that, based on a consideration of the factors outlined in 18 U.S.C. § 3664(f)(2), restitution is due in minimum monthly payments of at least 25% of Defendant's gross monthly income while he is incarcerated and monthly payments of $100 or 10% of Defendant's gross income (whichever is greater) after his release from prison; and it is further

**ORDERED** that all remaining terms of the Judgment of June 22, 2011 (Dkt. No. 27) remain in effect.

Dated: November 12, 2014
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge